UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRIGHTER PATH ALABAMA, LLC, | Case No. 3:26-cv-00212-ART-CLB |
| Plaintiff,<br>v. | ORDER ON TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION (ECF Nos. 3, 4) AND RELATED MOTIONS (ECF No. 2) |
| RITE OF PASSAGE, INC., | |
| Defendant. | |

Brighter Path Alabama, LLC ("Plaintiff"), an Alabama company that rehabilitates distressed businesses, brings this suit against Rite of Passage, Inc. ("Defendant"), a Nevada company that provides residential services for youth, for breach of contract under Nevada law. (ECF No. 1.) On March 24, 2026, it filed its Complaint and Motions for Temporary Restraining Order ("TRO") and Preliminary Injunction. (ECF Nos. 1, 3.) It subsequently filed a Motion to Shorten Time, requesting an abbreviated briefing schedule and hearing. (ECF No. 7.) The Court granted the motion and held a hearing on March 27, 2026. (ECF No. 11.) This order follows the oral ruling announced at that hearing.

## I.    Factual Background

In 2025, Plaintiff and Defendant entered into a transaction for the purchase and sale of distressed youth treatment programs in Florida and Alabama. (ECF No. 10 at 2.) The parties entered into a separate Asset Purchase Agreement ("APA") to manage the sale of three different residential facilities: Brighter Path Tuscaloosa ("Tuscaloosa"), Brighter Path Montgomery ("Montgomery"), and Brighter Path Courtland ("Courtland"). (ECF No. 1-1.) Relevant to the motion at issue, the APA provides for closing in two phases: the Initial Closing, which had to occur by March 6, 2026, for the Tuscaloosa facility, and the Second Closing,

1

due to occur on March 31, 2026, addressing the Montgomery and Courtland facilities. (ECF No. 1-1.)

Section 1.5 of the APA addresses contingencies upon which the Buyer (Plaintiff) and Seller (Defendant) can terminate the APA. (*Id.*) Failure to satisfy the conditions in Section 1.5 before the Second Closing "shall entitle Buyer to terminate" the Agreement. (*Id.*) Those conditions include successful issuance of Emergency Contracts, the assignment and transfer to Defendant of all Assumed Contracts "under terms and conditions reasonably acceptable" to Defendant, and the resolution of all outstanding liabilities related to those contracts. (*Id.*)

The Assumed Contracts included an Alabama Department of Human Resources ("DHR") Emergency Contract for operation of the Courtland facility, an Alabama DHR Emergency Contract for operation of the Montgomery facility, the Montgomery Facility Lease Agreement, and the Courtland Facility Lease Agreement. (ECF No. 1-1 at 19.)

On March 13, 2026, an attorney for Plaintiff emailed Defendant's General Counsel asking about the possibility that Defendant would not close on the Montgomery and Courtland facilities, saying that Defendant "didn't agree in the APA to assign a newly-negotiated lease with Courtland but rather the lease in place." (ECF No. 3-4.) Plaintiff's counsel replied with an acknowledgment and notice of termination of the APA on the grounds that the assignment and transfer of all Assumed Contracts on terms reasonably acceptable did not occur, and that all outstanding liabilities related to the Assumed Contracts were not resolved. (ECF No. 3-5.)

## II.    Legal Standard

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1347 n.2 (1977). To qualify for preliminary injunctive relief, a plaintiff must establish: (1) likelihood of success on the merits; (2) likelihood of

irreparable harm; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

A plaintiff seeking a mandatory, as opposed to prohibitory, injunction, "must establish that the law and facts clearly favor her position." *N.D. v. Rekydal*, 102 F.4th 982, 992 (9th Cir. 2022). A mandatory injunction "orders a responsible party to take action" whereas a prohibitory injunction "simply maintain[s] the status quo." *Id.* (quoting *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) (internal citations omitted). "There is no good blanket answer to the question of what the status quo is," *Id.* (quoting *Labrador v. Poe by & through Poe*, 144 S. Ct. 921, 930, 218 L. Ed. 2d 400 (2024) (Kavanaugh, J., concurring), but the Ninth Circuit has found it can be "categorized as one of action versus inaction." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1060 (9th Cir. 2014).

### III.   Analysis

#### a.   **Likelihood of Success on the Merits**

The Court finds that Plaintiff has not met the heightened standard of "clear" likelihood of success on the merits for a mandatory injunction.

To prove a breach of contract, a plaintiff must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 899 (9th Cir. 2013). Further, with respect to the element of breach, a breach of a contract is "a material failure of performance of a duty arising under or imposed by agreement." *Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 734 P.2d 1238, 1240 (Nev. 1987). The parties dispute whether there was a breach under Section 1.5 of the APA addressing contingencies.

Defendant argues that multiple contingencies required by Section 1.5 were not met: it did not have a lease with terms that were reasonably acceptable, Plaintiff did not successfully issue Emergency Contracts by the Alabama

Departments, and there were outstanding liabilities related to the assumed contracts in the form of delinquent rent and incomplete maintenance. Defendant contends that Section 1.5 explicitly states that assumed contracts must be on "terms and conditions reasonably acceptable to Buyer," and further, the landlord of the Courtland facility demanded a new lease with Defendant as opposed to an assignment of the current lease. (ECF No. 10 at 3.) In these negotiations, the landlord refused to make facility appropriate for high acuity children expected to be residents, which was known by Plaintiff prior to this lawsuit in meetings with both parties' attorneys. (*Id.*) Plaintiff claims that Defendants were required to accept the Courtland Facility Lease Agreement on the same terms under which Plaintiff had the lease, and that any negotiations were an attempt to get additional landlord concessions beyond the APA's requirements. (ECF No. 3 at 6.)

The Court finds that the plain language of "terms and conditions reasonably acceptable to Buyer" encompasses the negotiations that Defendant engaged in with the landlord in order to effectuate Section 1.5. *See Keife v. Metro. Life Ins. Co.,* 797 F. Supp. 2d 1072, 1075 (D. Nev. 2011) ("[u]nder Nevada law … [t]he starting point for the interpretation of any contract is the plain language of the contract.") The language is not ambiguous, because it is not susceptible to more than one interpretation. *Shelton v. Shelton,* 119 Nev. 492, 78 P.3d 507, 510 (2003). Therefore, Defendant properly identified a contingency that was not met, giving it the right to terminate the APA under Section 1.5.

Defendant also claims that no contracts were issued by the Alabama DHR and no licenses were granted by the Alabama Department of Mental Health ("DMH") as required by the contract, in part because Plaintiff failed to provide corrective items following a DHR inspection and the required Section 504/ADA certificate for the Montgomery facility. (*Id.*) At oral argument, Plaintiff disputed that it was responsible for the lack of state contracts and licensure at the time that the Second Closing approached due to prior communications with

Defendant. It claimed that any outstanding liabilities related to the Assumed Contracts would be resolved in escrow using funds from the purchase of the Courtland and Montgomery facilities. Defendants dispute that this was agreed upon at the time that the Second Closing approached. Because the Court has already identified that Defendant had a right to terminate the APA under Section 1.5 due to a failure to provide all Assumed Contracts under "terms and conditions reasonably acceptable to Buyer," it does not resolve these contractual disputes at this stage in the case.

Therefore, Plaintiff has not clearly established that Defendant breached the contract sufficient to meet the standard for a preliminary injunction. Because likelihood of success on the merits is a threshold issue for a preliminary injunction, the Court does not analyze the remaining *Winter* factors. *Garcia*, 786 F.3d at 740.

b.  **Motions to Strike**

At oral argument, the parties each moved to strike testimony by their respective witnesses regarding interpretation of the APA. Because the Court did not rely on the disputed testimony of the witnesses in granting the motion, the parties' motions to strike are denied as moot. *MacDougall v. American Honda Motor Co.*, SACV 17-1079 JGB (DFMx), 2020 WL 5583534, at *4 (C.D. Cal. Sept. 11, 2020) *overruled on other grounds by MacDougall v. Am. Honda Motor Co.*, No. 20-56060, 2021 WL 6101256 (9th Cir. Dec. 21, 2021); *Winnemucca Farms, Inc. v. Eckersell*, 2009 WL 1360378, at *7 (D. Nev. May 13, 2009).

c.  **Motion to Seal**

Alongside their Motion for TRO/Preliminary Injunction, Plaintiff filed a Motion for Leave to File Exhibits Under Seal for Exhibits 5 and 6 containing financial information of Plaintiff's business. (ECF No. 2.)

"The courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents."

*Courthouse News Serv. v. Planet*, 947 F.3d 581, 591 (9th Cir. 2020) (quoting *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1069 (7th Cir. 2018)). Certain documents are exceptions to this right and are generally kept secret for policy reasons, including grand jury transcripts and warrant materials in a pre-indictment investigation. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).

If a party seeks to file a document under seal, there are two possible standards the party must address: the compelling reasons standard or the good cause standard. *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-97 (9th Cir. 2016). The choice between the two standards depends on whether the documents proposed for sealing accompany a motion that is "more than tangentially related" to the merits of the case. *Id.* at 1099. If it is more than tangentially related, the compelling reasons standard applies. If not, the good cause standard applies. *Ctr. for Auto Safety*, 809 F.3d at 1102.

Here, Plaintiff seeks to file exhibits under seal in connection with a motion for preliminary injunction, which is "more than tangentially related" to the merits of a case. Therefore, the compelling reasons standard applies.

Under the compelling reasons standard, "a court may seal records only when it finds 'a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture.'" *United States v. Carpenter*, 923 F.3d 1172, 1179 (9th Cir. 2019) (quoting *Ctr. for Auto Safety*, 809 F.3d at 1096-97) (alteration in original). Finding a compelling reason is "best left to the sound discretion" of the Court. *Ctr. for Auto Safety*, 809 F.3d at 1097 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)).

This Court, and others within the Ninth Circuit, have recognized that the need to protect financial records and proprietary business information. *See Sky Law Group v. Paul Padda Law, PLLC*, 2026 WL 222268, at *7 (D. Nev. Jan. 27, 2026); *Center for Auto Safety*, 809 F.3d at 1097 (sealing sources of business

information that might harm a litigant's competitive standing is compelling).

Here, the referenced exhibit contains Plaintiff's sensitive financial and business information. Balancing the need for the public's access to information regarding the judicial process weighs in favor of sealing these exhibits. Therefore, Plaintiff's motion to seal, (ECF No. 2) is granted.

## IV.    Conclusion

It is therefore ordered that Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction (ECF Nos. 3, 4) are DENIED.

It is further ordered that Plaintiffs' Motion to Seal Document (ECF No. 2) is GRANTED.

Dated this 31st day of March, 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE